FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 17, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT B. LUTZ, MD, MPH, a married man,<br><br>                    Plaintiff,<br><br>    v.<br><br>SPOKANE REGIONAL HEALTH DISTRICT, a Washington State local public health agency,<br><br>                    Defendant. | No.  2:22-cv-00028-MKD<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>**ECF No. 20** |

Before the Court is Defendant Spokane Regional Health District's

("SRHD") Motion for Judgment on the Pleadings, ECF No. 20.  On November 1,

2023, the Court held a hearing on the motion.  Plaintiff Robert B. Lutz was

represented by Caleb Hatch and Robert Carlson.  Defendant SRHD was

represented by Heather Yakely.  The Court has considered the briefing, heard from

counsel, and is fully informed.  For the reasons explained below, the Court grants

in part and denies in part SRHD's Motion.

ORDER - 1

# BACKGROUND

## A. Procedural History

On February 8, 2022, Plaintiff Lutz filed the Complaint in Spokane County Superior Court, asserting the following claims against Defendants SRHD and Amelia Clark:  (1) wrongful termination in violation of SRHD's Bylaws, RCW 70.05, and Washington's Administrative Procedure Act ("WAPA"); (2) wrongful termination in violation of RCW 70.05 and RCW 42.30.110; (3) wrongful termination for lack of just cause; (4) wrongful termination in violation of public policy; (5) wrongful termination in violation of substantive and procedural due process rights of the Fifth and Fourteenth Amendments, 42 U.S.C. § 1983, and Article 1, Section 3 of the Washington Constitution; (6) wrongful termination in violation of free speech rights of the First Amendment, 42 U.S.C. § 1983, and Article 1, Section 4 of the Washington State Constitution; and (7) defamation. ECF No. 1-1 at 24-30.

On February 23, 2022, SRHD removed the matter to federal court.  ECF No. 1.  On March 23, 2022, SRHD filed its Answer, and on October 7, 2022, SRHD filed the instant Motion for Judgment on the Pleadings.  ECF No. 20.  On July 31, 2023, the parties filed a stipulated notice dismissing all claims against Clark.  ECF No. 41.  The claims against SRHD remain pending.  ECF No. 41.

**B. Factual History[1]**

Defendant SRHD is one of 35 local public health districts in Washington, ECF No. 1-1 at 9 ¶ 9, and is governed by its Board of Health ("the Board"), *id.* at 10 ¶ 10. SRHD employs an Administrative Officer ("AO") to serve as the Board's director and executive secretary. *Id.* at 10 ¶ 15. SRHD also employs a Local Health Officer ("LHO"), whose responsibilities and tenure are subject to statutory requirements and the SRHD's Bylaws. *Id.* at 10-11 ¶¶ 16-20.

Plaintiff Lutz was hired as the LHO on May 15, 2017. *Id.* at 11 ¶ 19. He viewed advocacy for public health as "more . . . than his job," but rather, as a "career-long passion." *Id.* at 12 ¶ 27. As part of that advocacy, he would write Op-Ed pieces on public health issues for publication in the Spokane area. *Id.* He felt that such advocacy was his "right and obligation as the LHO" but was sometimes met with "resistance and outright hostility" from some Board members, SRHD staff, and regional officials. *Id.* at 12 ¶ 28.

---

[1] On a motion for judgment on the pleadings, "[a]ll allegations of fact by the party opposing the motion are accepted as true." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988); *see also Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1155 (9th Cir. 2015) (citing *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)).

ORDER - 3

In February 2019, Lutz was "admonished" by the interim AO for stating at an all-staff meeting that he believed suicide prevention could not be adequately addressed without addressing firearms as the primary means of suicide. *Id.* at 12 ¶ 30. He was then instructed to obtain Board approval before submitting any future Op-Eds. *Id.* Later, he was directed by AO Clark to stop communicating with state representatives about firearm safety. *Id.* at 12 ¶ 31.

Following the death of George Floyd, Lutz wrote an Op-Ed on structural racism and forwarded it to SRHD's public information officer for approval. *Id.* at 13 ¶ 32. SRHD would not approve the Op-Ed for publication but did not say why. *Id.* at 13 ¶ 33. He took part in a related public march on May 31, 2020, and was later told that the Board was "not happy" that he had done so. *Id.* at 13 ¶¶ 34-35. AO Clark met with him about the Board members' concerns and instructed him to "separate" his personal advocacy from acts that could be associated with SRHD. *Id.* at 13 ¶ 38. AO Clark later approved an Op-Ed he wrote about structural racism, following the SRHD Board's resolution on a similar topic; but two Board members reportedly disapproved of the Op-Ed. *Id.* at 13-14 ¶¶ 39-40. AO Clark also pre-approved an Op-Ed Lutz co-wrote with the facilitator of the SRHD ethics committee, but after it was published, AO Clark told him that she and the Board disapproved of his Op-Eds. *Id.* at 14 ¶ 42.

On February 29, 2020, Governor Inslee declared a statewide emergency due to COVID-19. *Id.* at 15 ¶ 45. Local officials in the Spokane region, including Lutz, declared states of emergency in mid-March, after Spokane's first COVID-19 case was reported. *Id.* at 16 ¶ 52. Around the same time, Lutz cancelled the state middle-school basketball championships and issued a directive closing playgrounds, based on public health concerns. *Id.* at 15 ¶ 48, 16 ¶ 53. Board members made "negative comments" about the "economic impact" the cancellation of the basketball championships had on the community, and some disapproved of his decision to close playgrounds. *Id.* at 15 ¶ 50, 16 ¶ 54. On May 20, 2020, Lutz issued a directive regarding face coverings that he felt some SRHD Board members disapproved of. *Id.* at 17 ¶ 62.

On May 4, 2020, the Governor issued a protocol for reopenings that placed Spokane County in "Phase 1," the most restrictive phase. *Id.* at 16 ¶ 56. At the urging of Spokane County officials, Lutz applied for and obtained a variance to move to Phase 2 on May 23, 2020. *Id.* at 17 ¶¶ 58-61, 18 ¶ 63. By mid-June 2020, Lutz felt mounting pressure to further downgrade to Phase 3, which he felt was premature. *Id.* at 18 ¶ 66.

On June 15, 2020, Lutz was called into a "performance" meeting with AO Clark and two Board members that seemed to be based on his reluctance to downgrade to Phase 3. *Id.* at 18-19 ¶¶ 67-69. On June 18, 2020, he declined the

ORDER - 5

Board's resolution urging him to request a move to Phase 3. *Id.* at 19 ¶¶ 70-72.

Around the same time, AO Clark drafted—but ultimately did not proceed with—a

performance improvement plan (PIP) for Lutz. *Id.* at 19-20 ¶¶ 72, 74. Instead, he

was instructed to resume weekly meetings with AO Clark. *Id.* at 19 ¶ 73. About

two weeks before he was fired, he gave a statement to the press suggesting that

Spokane might need to move back a phase in light of current data. *Id.* at 20 ¶ 78.

On October 29, 2020, the Board held an executive meeting about Lutz with

AO Clark and legal counsel, although Lutz was not aware of this meeting, and

there was no public vote on his continued employment. *Id.* at 20-21 ¶¶ 80-83. AO

Clark and legal counsel had prepared a Separation Agreement the day before that

offered approximately $53,000 in exchange for Lutz's assent to full release of his

claims and confidentiality. *Id.* at 21 ¶¶ 84-85. After the meeting, AO Clark

prepared another PIP. *Id.* at 21 ¶ 84. AO Clark and Board member Ben Wick met

with Lutz that day and "read a list of [his] alleged performance deficiencies." *Id.*

at 21 ¶ 87. AO Clark did not mention a Board vote to terminate Lutz nor any PIP;

instead, she told Lutz he was fired "effective immediately" and demanded the

return of his keys, laptop, and other job-related materials. *Id.* at 22 ¶ 89. She

handed him the Separation Agreement and said, "he had until 4:00 pm the next day

to sign it." *Id.* Later that day, an attorney for SRHD sent an email confirming

Lutz's termination. *Id.* AO Clark sent an email the next day stating that October

ORDER - 6

29 had been Lutz's "last day" at SRHD.  *Id.* at 22 ¶ 90.  She also stated at a press

conference that "there was not currently a health officer in charge" of SRHD and

that she would seek a contract worker to fill that position.  *Id.* at 22 ¶ 91.  Lutz was

never told he was being placed on administrative leave, although AO Clark later

claimed this.  *Id.* at 22 ¶¶ 89-90, 92.

Thereafter, the Board scheduled a "hearing" to vote on Lutz's termination

for November 5, 2020, and provided him with less than 48 hours' notice.  *Id.* at 23

¶ 94.  Only Lutz and AO Clark were allowed to give statements at the hearing, and

neither were allowed to question the Board or anyone else.  *Id.* at 23 ¶¶ 95, 101.  It

was clear to Lutz that few Board members, if any, had read his submitted

materials.  *Id.* at 23 ¶ 97.  The Board did not seriously question AO Clark and

allowed her to submit "hundreds of documents" after the deadline.  *Id.* at 23 ¶¶ 98-

99.  The Board then adjourned for a "lengthy" period, then voted to "ratify" Lutz's

firing.  *Id.* at 23-24 ¶¶ 101-02.

## DISCUSSION

SRHD seeks judgment on the pleadings for all seven of Lutz's claims.

### A. Fed. R. Civ. P. 12(c) Standard

"After the pleadings are closed—but early enough not to delay trial—a party

may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The Rule 12(c)

analysis is "substantially" the same as the analysis for a Rule 12(b)(6) motion to

dismiss for failure to state a claim. *Chavez*, 683 F.3d at 1108. To survive such a

motion, the "complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A complaint must contain either direct or inferential allegations that plausibly

address all material elements necessary to sustain recovery under a viable legal

theory. *Twombly*, 550 U.S. at 555, 562. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*

Judgment on the pleadings "is properly granted when, taking all the

allegations in the pleadings as true, the moving party is entitled to judgment as a

matter of law." *San Francisco Taxi Coal. v. City & Cnty. of San Francisco*, 979

F.3d 1220, 1223 (9th Cir. 2020) (citation and quotation marks omitted). The

movant must clearly establish that there are no disputed issues of material fact.

*McGlinchy*, 845 F.2d at 810; *Gen. Conf. Corp. of Seventh-Day Adventists v.

Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

"A material issue of fact that will prevent a motion under Rule 12(c) from being

successful may be framed by an express conflict on a particular point between the parties' respective pleadings.  It may also result from the defendant pleading new matter and affirmative defenses in his answer."  Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1368 (3d ed., Apr. 2023) (footnotes omitted).

**B. State-Law Wrongful Termination (Claims 1-4)**

Lutz's first four claims assert wrongful termination under Washington law, in violation of a promise of specific treatment (claims 1 and 2), without just cause (claim 3), and in violation of public policy (claim 4).  ECF No. 1-1 at 24-28. SRHD argues that Lutz has failed to allege sufficient facts to establish a plausible basis for each claim, and that, on his first and fourth claims, he has failed to assert a valid legal basis for relief.  ECF No. 20 at 19-33.

The general rule in Washington is that "an employment contract, indefinite as to duration, is terminable at will by either the employee or employer." *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1084 (Wash. 1984) (en banc). But "three recognized exceptions" to this rule can provide grounds for a wrongful termination claim: statutory limitations (e.g., Washington's Law Against Discrimination), contractual limitations, and public policy limitations.  *Ford v. Trendwest Resorts, Inc.*, 43 P.3d 1223, 1226-27 (Wash. 2002) (en banc).  As explained below, Lutz's state-law wrongful termination claims raise different "exceptions" to the at-will rule.

1

2

    *1. Wrongful Termination in Violation of the SRHD Bylaws, RCW 70.05.050, and the WAPA*

Lutz alleges he was wrongfully terminated in violation of procedures guaranteed in SRHD's Bylaws, RCW 70.05, and the WAPA when AO Clark terminated him on October 29, 2020. ECF No. 1-1 at 24-25 ¶¶ 104-115. SRHD contends that the facts pled, even if true, did not violate the Bylaws or RCW 70.05 and contends that the WAPA does not apply to local agencies like SRHD. ECF No. 20 at 19-27.

"[I]f the employer has made promises of specific treatment in specific situations on which the employee justifiably relies, those promises are enforceable and may modify an employee's at-will status." *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 404 P.3d 464, 477 (Wash. 2017). Employees alleging wrongful termination must demonstrate:

    (1) that a statement (or statements) in an employee manual
          or handbook or similar document amounts to a promise
          of specific treatment in specific situations,
    (2) that the employee justifiably relied on the promise, and
    (3) that the promise was breached.

*Id.* (citation omitted). Whether each element is met is a question of fact. *See id.* Accordingly, a plaintiff need only allege plausible facts showing each element to survive a Rule 12(c) motion.

ORDER - 10

Lutz has pleaded three "statements" that he alleges constitute a promise of specific treatment in specific situations: the SRHD Bylaws, RCW 70.05.050, and the WAPA (RCW 34.05).  ECF No. 1-1 at 24-25 ¶¶ 104-15.

Article IV, section 3 of the SRHD Bylaws provides that "[t]he Board of Health shall approve the appointment and termination of a District Health Officer." ECF No. 1-1 at 24 ¶ 106.

The term of office for, and the procedure for removal of, the LHO is provided in RCW 70.05.050:

> No term of office shall be established for the local health officer but the local health officer shall not be removed until after notice is given, and an opportunity for a hearing before the board or official responsible for his or her appointment under this section as to the reason for his or her removal.

Although Lutz does not indicate a specific subsection of the WAPA, his allegations appear to invoke the WAPA's procedural requirements for adjudicative proceedings.  ECF No. 1-1 at 25 ¶ 111 ("[A] proper hearing was governed by [WAPA], which, among other things, required at least 7-days' notice").  However, the WAPA only applies to *state* agencies involved in statewide programs, not *local* agencies.[2]  *See Ent. Indus. Coal. v. Tacoma-Pierce Cnty. Health Dep't*, 105 P.3d

---

[2] The WAPA defines "agency" to mean "any *state* board, commission, department, institution of higher education, or officer, . . . and any local governmental entity

985, 990 (Wash. 2005) (en banc).  Courts use "several nonexclusive factors to determine whether a government entity is a 'state agency' under the [W]APA": whether the government agencies (1) "had limited geographical areas of operation," (2) "were independent and permitted to set their own rules and regulations," and (3) "were not receiving state funding."  *Id.* (citing *Riggins v. Hous. Auth.*, 549 P.2d 480, 482-83 (Wash. 1976)).

SRHD argues that the Washington Supreme Court's decision in *Entertainment Industry Coalition* dispositively establishes that a local health board like SRHD is not an "agency" under the WAPA.  ECF No. 20 at 25.  In that case, the Washington Supreme Court considered whether the Tacoma-Pierce County Board of Health was an "agency" under Washington's Equal Access to Justice Act (EAJA), and therefore, whether the plaintiffs could claim an attorney's fee award for "prevail[ing] in a judicial review of an 'agency action.'"  105 P.3d at 989-90.

Lutz argues that this case is inapplicable because it concerned the Washington EAJA, not the WAPA.  ECF No. 22 at 22.  But the court, while recognizing that the *Riggins* factors were created in relation to the WAPA, nevertheless applied them to the EAJA.  *Ent. Indus. Coal.*, 105 P.3d at 990.  The

_____

that may request the appointment of an administrative law judge under chapter 42.41 RCW."  RCW 34.05.010(2) (emphasis added).

ORDER - 12

court then found that the board of health was not an "agency" because "[u]nder [RCW 70.05], the duties of local health boards primarily deal with local health concerns, and local health boards operate with limited geographical jurisdiction." *Id.* The court further noted that RCW 70.05 expressly pertains to regulations of "*LOCAL* HEALTH DEPARTMENTS, BOARDS, OFFICERS," and that "[t]his description alone could resolve the issue." *Id.* (emphasis in opinion). The board's receipt of some state funding, without more, did not turn it into a state agency, otherwise "virtually no local agency would be excluded" from the definition of "state agency." *Id.* at 990 n.6.

Lutz has not pleaded any facts that plausibly distinguish *Entertainment Industry Coalition*. In fact, he cites RCW 70.05 alongside the WAPA—the same chapter that the Washington State Supreme Court in *Entertainment Industry Coalition* cited as clear indication that the board of health was not a state agency. *See id.* at 990; ECF No. 1-1 at 24. At most, he argues in his response that "SRHD is required to comply with" state directives "for the benefit of the entire State," receives most of its funding from the state, and "is concerned with statewide programs and is part of a statewide systems [sic]."[3] ECF No. 22 at 22. The same

---

[3] Lutz all but concedes that he has inadequately pleaded the WAPA issue, stating that he "is willing and able to amend the Complaint to add additional facts

could be said for all local health departments and boards created by and subject to the statutory mandates of RCW 70.05. Accordingly, Lutz has not pleaded sufficient facts to conclude that there is a dispute of material fact that SRHD, like the Tacoma-Pierce County Board of Health, is not a state agency subject to the WAPA.

But the WAPA's inapplicability is not fatal to the rest of Lutz's first claim. It is plausible that RCW 70.05.050 and the SRHD's Bylaws could support a promise of specific treatment in a specific situation. Whether they did constitute such a promise, whether Lutz reasonably relied on such a promise, and whether SRHD breached, are questions of material fact. Lutz has plausibly alleged that these questions of fact may be answered in his favor, for example, in relation to AO Clark's summary termination before he received a hearing or Board vote.[4] *See*

_____

relating" to these assertions. ECF No. 22 at 22-23.

[4] SRHD's arguments on this claim are (1) that the moment of "termination" occurred on November 5, 2020, under the reasoning that AO Clark could not have fired Lutz if she was not statutorily authorized to do so, and (2) if she did fire Lutz on October 29, 2020, that the Board's later "ratif[ication]" of that firing was adequate. ECF No. 20 at 9-10. At best, this creates a dispute of material fact and does not entitle SRHD to judgment on the pleadings.

ORDER - 14

ECF No. 1-1 at 24 ¶¶ 105-07, 25 ¶ 108.  Accordingly, Lutz has adequately pleaded factual allegations that state a plausible claim for his first cause of action as to the Bylaws and RCW 70.05.050.

    *2. Wrongful Termination in Violation of RCW 70.05.050 and 42.30.110*

    Lutz alleges he was terminated by AO Clark on October 29, 2020, without the procedures guaranteed in RCW 70.05.050 and RCW 42.30.110,[5] after the SRHD Board met in an executive session.  ECF No. 1-1 at 25-26 ¶¶ 116-120.  SRHD argues Lutz has not alleged any wrongdoing.  ECF No. 20 at 27.

    As explained above, RCW 70.05.050 provides requirements for the LHO's term of office and removal.  The Washington Open Public Meetings Act ("OPMA") provides certain requirements for the meetings of public agencies, including the limited circumstances in which a public agency may hold an executive session instead of a public meeting.[6]  RCW 42.30.110.  The

---

[5] Lutz references the WAPA midway through this claim, but the Court disregards this reference for the reasons explained above.  *See* ECF No. 1-1 at 26 ¶ 119 ("RCW 34.05").

[6] Unlike the WAPA, the OPMA expressly applies to local agencies.  RCW 42.30.020(1)(b) ("Any county, city, school district, special purpose district, or other municipal corporation or political subdivision of the state of Washington").

1    "fundamental premise" of the OPMA is "that all 'action' must be taken at meetings

2    open to the public." *Miller v. City of Tacoma*, 979 P.2d 429, 434 (Wash. 1999) (en

3    banc) (citing RCW 42.30.030).  In other words, the OPMA's "general rule is that

4    'action' must be taken in an open meeting," and "one of [its] exceptions must be

5    triggered before an executive session may be convened." *Id.*  "[A]ny action taken

6    beyond the scope of the exception" violates the OPMA.  *Id.*

7        SRHD argues that neither statute provides Lutz with a plausible basis for

8    relief because he does not allege that any "official action, decision, or vote"

9    actually took place at the October 29, 2020, Board meeting, so no "wrongdoing"

10    could have occurred there.  ECF No. 20 at 10-11, 27 (alterations omitted).

11        But Lutz has alleged that there was a nonpublic Board meeting on October

12    29, 2020, right after which AO Clark fired him, and that "[t]o date, SRHD and the

13    Board have refused to disclose what was discussed" at this meeting, "including

14    whether any official actions or decisions were taken."  ECF No. 1-1 at 26 ¶¶ 117-

15    18.  He cites the statute that expressly requires that an LHO receive an opportunity

16    for a hearing before the "board or official responsible for his or her appointment"

17    before he or she is removed.  *See* RCW 70.05.050.  He also cites the statute that

18    expressly requires that a final action "discharging or disciplining an employee . . .

19    shall be taken in a meeting open to the public."  RCW 42.30.110.  In other words,

20    Lutz has alleged that public Board action and an opportunity for a Board hearing

was required before he could be fired, and a nonpublic Board meeting occurred just before AO Clark fired him.  His claim "has facial plausibility" where he has pleaded "factual content that allows the [C]ourt to draw the reasonable inference that [SRHD] is liable for the misconduct alleged."  *See Iqbal*, 556 U.S. at 678.

Accordingly, the Court denies judgment on the pleadings on Lutz's second claim.

### 3. Wrongful Termination for Lack of Just Cause

Lutz argues that SRHD's Bylaws and RCW 70.05 required SRHD to have just cause to terminate him and that SRHD lacked just cause for his termination. ECF No. 1-1 at 26-27 ¶¶ 121-29.  SRHD contends that Lutz's employment was at-will and did not require just cause for termination.  ECF No. 20 at 28.

The Washington Supreme Court has held that "just cause" means "a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power."  *Baldwin v. Sisters of Providence in Wash., Inc.*, 769 P.2d 298, 304 (Wash. 1989).  Additionally, "a discharge for 'just cause' is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true."  *Id.*

Absent statutory or public-policy limitations, an employer's "right to discharge an employee without cause" is only subject to contract-based limitations.

ORDER - 17

*See Ford*, 43 P.3d at 1227.  Contract-based limitations may exist where "(1) there is an implied agreement to that effect"; "(2) the employee gives consideration in addition to the contemplated" employment services; or (3) where an employer's policy statement amounts to a promise of specific treatment in specific situations.[7]  *Thompson*, 685 P.2d at 1084, 1088.

As a threshold matter, Lutz does not claim he had an express provision in his employment contract requiring just cause for his termination.  Rather, he claims that RCW 70.05.070 and the SRHD Bylaws[8] "created a reasonable expectation" that he could only be terminated for just cause.  ECF No. 1-1 at 27 ¶ 126.  He does not specify whether he is bringing an implied-contract claim or a specific-treatment

---

[7] The Washington courts appear to view the specific-treatment claim as a promissory estoppel or quasi-contract claim.  "The *Thompson* specific treatment claim is not an implied or express contract claim, but is independent of a contractual analysis and instead rests on a justifiable reliance theory."  *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 125 P.3d 119, 128 (Wash. 2005) (en banc).

[8] Lutz also references Washington Administrative Code sections 246-101-505 and 246-100-036.  These sections set forth the duties of local health officers and jurisdictions and do not clearly pertain to officer terminations.

ORDER - 18

claim, which inadequately states the legal basis for his claim.  Further, he has

insufficiently stated the factual basis for his claim under either legal theory.

a.  Implied-Contract Theory

"In some circumstances, the [Washington] courts will find an implied

agreement between the employer and employee" requiring termination for cause

"if employment was intended to be permanent or for a certain duration."  *Greaves*

*v. Med. Imaging Sys., Inc.*, 879 P.2d 276, 278 (Wash. 1994) (en banc).  Where an

employee claims such an implied agreement existed, courts consider whether there

was an "understanding," "intent," and other circumstances indicating a contract, or

whether there was "consideration *in addition to* [the employee's] required services

which result[ed] in a detriment to the employee and a benefit to the employer."  *Id.*

at 279.  A plaintiff's "understanding that he would be employed as long as he

performed his work in a satisfactory manner" is insufficient to show an implied

agreement as a matter of law.  *Id.* (citation omitted).

Here, Lutz has only alleged that he had a "reasonable expectation" of

continued employment, without alleging facts that show contractual intent or

additional consideration.  *See* ECF No. 1-1 at 27 ¶ 126.  As SRHD indicates, Lutz

has not pleaded the factual basis for any offer, acceptance, or consideration relating

to an implied contract.  *See* ECF No. 20 at 29; ECF No. 23 at 12.  He has only

alleged he had an understanding that his employment would continue as long as

there was no cause to terminate him; this does not adequately state a claim for breach of an implied contractual agreement.  *See Greaves*, 879 P.2d at 279.

b.  Promise of Specific Treatment

An employer's ambiguous discipline policy may be plausibly interpreted as a promise of specific treatment—that termination must be for cause.  *See Mikkelsen*, 404 P.3d at 467, 477.  In *Mikkelsen*, an employee was terminated after sending out a survey asking for colleagues' opinions on her supervisor.  *Id.* at 469.  She alleged her discharge violated the employer's corrective action policy.  *Id.* at 475.  The court held that "the policy [was] ambiguous and could plausibly be read as modifying [the employee's] at-will status," even where the policy disclaimed that it constituted a promise of specific treatment in disciplinary proceedings.  *Id.* at 477.  The court reasoned that, although the policy reserved the employer's "broad discretion in implementing disciplinary procedures," those provisions were "at odds with other parts of the policy that seem[ed] to promise fair treatment and arguably establish[ed] a for-cause requirement for discharge."  *Id.*  It ultimately concluded that "the ambiguity in the policy create[d] a genuine issue of material fact sufficient to survive summary judgment."  *Id.*

Lutz has argued that the requirements of RCW 70.05.050 and SRHD's Bylaws constituted a promise of specific treatment.  ECF No. 22 at 26-27.  In relevant part, RCW 70.05.050 provides that "the local health officer shall not be

ORDER - 20

removed until . . . an opportunity for a hearing . . . as to the *reason* for his or her

removal." (emphasis added).[9]  SRHD contends that whether an employer's policy

statement amounts to a promise of specific treatment in specific situations is a

question of law, citing *Smoot v. Boise Cascade Corp.*, 942 F.2d 1408, 1411 (9th

Cir. 1991).  ECF No. 20 at 29-30.  SRHD further asserts that the legislature did not

mean "cause" or "just cause" when it used "reason" in RCW 70.05.050 and

therefore cannot be the basis for a promise of specific treatment.  ECF No. 20 at

29-30; ECF No. 23 at 11-12.

The Court first notes that, since *Smoot* was decided, the Washington

Supreme Court has resolved the issue of whether an employer's policy statement

was a promise of specific treatment was an issue of law or fact.  In *Smoot*, the

Ninth Circuit observed that the Washington courts had reached inconsistent

conclusions on whether construing an employer's policy statement as a promise of

specific treatment was an issue of law or fact.  942 F.2d at 1411 (comparing

*Lawson v. Boeing Co.*, 792 P.2d 545 (Wash. Ct. App. 1990) with *Brady v. Daily*

---

[9] Article IV, section 3 of SRHD's Bylaws simply requires that the Board "approve

the appointment and termination" of the LHO.  *See* ECF No. 1-1 at 24 ¶ 106.  In

other words, the Bylaws do not require any "reason" beyond what is required by

RCW 70.05.050.

ORDER - 21

*World*, 718 P.2d 785 (Wash. 1986)).  Subsequently, in 2017, the Washington

Supreme Court clearly held that this is a question of fact.  *Mikkelsen*, 404 P.3d at

477.

Regardless, the allegations here do not raise a plausible question of fact.

Lutz argues that "reason" and "just cause" are synonymous, and that the

legislature's failure to use the "magic wor[d]s" of "for cause" is immaterial where

the statute "clearly establishes at least an atmosphere of job security and fair

treatment."  ECF No. 22 at 27.  But he cites no authority in support of this

argument.  Moreover, "just cause" has a specific legal significance in the

employment-law context and a particular definition under Washington law.  *See*

*Baldwin*, 769 P.2d at 304.  No allegation of fact could change that RCW 70.05.050

does not require "just cause," only a "reason."[10]

Finally, there is no "ambiguity" in the statute or Bylaws that parallels the

ambiguous disciplinary policy in *Mikkelsen*.  In *Mikkelsen*, the employer's policies

appeared to contradict each other, resulting in ambiguity.  404 P.3d at 477.  That is

---

[10] This is not to say that an LHO (or any other at-will employee) could be

terminated for an illegal reason.  But the statute would clearly permit termination

of an LHO for a legal reason that did not meet all aspects of the *Baldwin* "just

cause" standard.

ORDER - 22

not the case here.  The SRHD Bylaws require Board approval of the appointment and termination of the LHO, and RCW 70.05.050 indicates that the LHO must not be terminated before receiving notice and a hearing on the "reason" for the termination.  There is no apparent conflict between these requirements that could result in ambiguity and present a dispute of material fact.

In sum, Lutz has not stated a plausible legal and factual basis for his claim that RCW 07.05.050 and the Bylaws required just cause for his termination.  The Court therefore grants SRHD's motion on this claim.

### 4.  Wrongful Termination in Violation of Public Policy

Lutz alleges that his termination violated the "strong public policy" of "protecting and promoting public health."  ECF No. 101 at 27-28 ¶¶ 131-137.  He argues that, as part of this public policy, LHOs must be free "to make decisions solely in the interest of public health, undeterred by political or economic pressures."  ECF No. 1-1 at 28 ¶ 133-34.  SRHD argues Lutz has failed to identify a statute or case recognizing the public policy he claims was contravened by his termination.  ECF No. 20 at 31-33.

The tort for wrongful discharge in violation of public policy is a narrow exception to the at-will doctrine, generally limited to four scenarios:

> (1) where employees are fired for refusing to commit an
> illegal act;
> (2) where employees are fired for performing a public duty
> or obligation, such as serving jury duty;

ORDER - 23

1
2

> (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and
> (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing.

3

4   *Martin v. Gonzaga Univ.*, 425 P.3d 837, 843 (Wash. 2018) (en banc) (internal

5   quotations omitted).  If a plaintiff's allegations do not fit neatly into one of those

6   categories, Washington courts require proof of the following elements:

7
8
9

> (1) The plaintiffs must prove the existence of a clear public policy (the clarity element).
> (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the jeopardy element).
> (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the causation element).
> (4) The defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element).

10
11
12

13   *Id.*  What constitutes a clear mandate of public policy is a question of law "and can

14   be established by prior judicial decisions or constitutional, statutory, or regulatory

15   provisions or schemes."  *Id.* at 844.  "The employee must plead and prove that a

16   stated public policy, either legislatively or judicially recognized, may have been

17   contravened."  *Thompson*, 685 P.2d 1081, 1089.  The Washington Supreme Court

18   has cautioned courts against finding that a termination was in violation of public

19   policy absent some prior legislative or judicial expression that the policy exists.  *Id.*

20        The significant showing required to establish the existence of a public policy

     was demonstrated in *Gardner v. Loomis Armored Inc.*, 913 P.2d 377 (Wash. 1996)

ORDER - 24

(en banc).  In *Gardner*, the driver of an armored vehicle saw a woman run out of a bank screaming for help, pursued by a man with a knife.  *Id.* at 378.  The driver did not see anyone else coming to help the woman, so he got out of the truck, locked the door behind him, and went to the woman's aid.  *Id.* at 379.  The driver's employer had a strict "company rule forbidding armored truck drivers from leaving the truck unattended."  *Id.*  The driver was fired for violating this rule.  *Id.*

The driver alleged his termination violated three public policies.  *Id.* at 382-84.  First, he alleged that four state statutes, read together, constituted a public policy of "encouraging citizens to help law enforcement."  *Id.* at 382.  The court held that this was true, "but only under very limited circumstances," and that public policy would not be "furthered by encouraging citizens to jump into the midst of every criminal situation."  *Id.* at 383.  Second, he argued that there was a statutory and common-law policy "of encouraging citizens to render aid to those in need, or be good samaritans."  *Id.*  The court found "weak support in legislative and judicial materials" for such a broad public policy, although it did not conclusively decide whether such a policy existed.  *Id.*  Finally, the driver alleged, and the court agreed, that there was a clear public policy in favor of assisting those in danger of serious physical injury or death.  *Id.*  This policy of protecting human life was "clearly evidenced by countless statutes and judicial decisions" and was so

1    strong that "courts have even suspended certain fundamental constitutional rights

2    when a citizen's life is in imminent danger." *Id.*

3        In this case, Lutz has alleged that LHOs must be "free to exercise their

4    sound medical and public health judgment in protecting and promoting public

5    health without political and economic pressure," otherwise "it would jeopardize the

6    strong public policy underlying public health." ECF No. 1-1 at 28 ¶ 134. He

7    seems to rely on the statutes that create and regulate local health districts and set

8    the LHO's job responsibilities as evidence that this policy exists. *See* ECF No. 1-1

9    at 27-28 ¶¶ 131-33; ECF No. 22 at 27-29. However, he does not identify any

10   specific statutes or authorities to support his claim. As such, his claimed public

11   policy finds even weaker support in legislative and judicial materials than the two

12   policies that were found insufficient in *Gardner*. *See* 913 P.2d at 382-83.

13       Accordingly, Lutz has failed to plead the existence of a public policy clearly

14   established by legislative or judicial expression and that was violated by his

15   termination. The Court grants SRHD's motion and dismisses Lutz's fourth claim.

16   **C. Wrongful Termination in Violation of Substantive and Procedural Due**
     **Process Rights of the Fifth and Fourteen Amendments, 42 U.S.C.**
17   **§ 1983, and Art. 1, § 3 of the Washington Constitution (Claim 5)**

18       Lutz commingles his procedural due process and substantive due process in

19   his fifth cause of action. They are distinct claims and will be addressed separately.

20   In addition, Washington Constitution's due process clause "does not offer broader

ORDER - 26

protection than the Fourteenth Amendment." *Wash. Fed'n of State Emps. v. State*, 534 P.3d 320, 333 (Wash. 2023) (en banc). Therefore, the federal constitutional analysis applies to both claims.

### 1. Procedural Due Process

Lutz alleges that SRHD wrongfully terminated him and removed him from his position as LHO in violation of his procedural due process rights. ECF No. 1-1 at 28-29 ¶¶ 138-140. SRHD argues that Lutz's procedural due process claim fails to allege any liberty or property interest that was affected by his termination. ECF No. 20 at 33-34.

### a. Constitutional Property Interest

A plaintiff must establish they possessed a property interest deserving constitutional protection to state a claim under the Due Process Clause. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Property interests are created and defined by independent sources such as state law, not the U.S. Constitution itself. *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 931 (9th Cir. 2017). "A property interest arises only where there is a legitimate claim of entitlement, not merely an abstract need or desire for the particular benefit." *Id.* A limitation on adverse changes in contract status may create such a legitimate claim of entitlement. *See id.* at 932.

In *Roybal*, a school district reassigned its principal to work as a teacher and reduced his salary. *Id.* at 930.  The principal alleged he had been deprived of property without due process.  *Id.*  The Ninth Circuit held that the principal's salary was a protected property interest under a state statute requiring notice and an informal meeting before an administrator could be reassigned to a subordinate position.  *Id.* at 932.  The court reasoned that "Washington authority describes [the statute] as 'tenure,' allowing principals to be removed from their positions only when the decision to do so is supported by probable cause."  *Id.*  The court further held that "[s]uch a restriction, limiting the grounds on which salary may be reduced, creates a reasonable expectation that principals will continue to receive their salary, and therefore, a protected property right."  *Id.*

Here, Lutz has alleged that he was entitled to continued employment until after he was given notice and an opportunity for a hearing before the Board on the reason for his termination.  ECF No. 22 at 30 (citing RCW 70.05.050).  RCW 70.05.050 imposes a limitation (advance notice and hearing) on an adverse change in contract status (termination), even if it does not impose the same type of limitation as the probable-cause requirement in *Roybal*.  *See* 871 F.3d at 932.  This creates a reasonable expectation of continued receipt of a benefit, at least until after the LHO receives notice and a hearing as to the reason, and therefore creates a protected property right.  *See Roybal*, 871 F.3d at 932.

ORDER - 28

b.  What Process Was Due

"[O]nce a court determines that a protected property interest has been taken, 'the question remains [as to] what process is due.'"  *Brewster*, 149 F.3d at 983 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  An employer's failure to comply with a state statute does not necessarily establish a violation of federal procedural due process.  *Roybal*, 871 F.3d at 933.  "Rather, under federal law, what process is due is determined by context, to be analyzed in accordance with the three-part balancing test described in *Mathews v. Elridge*."  *Id.* (citing 424 U.S. 319 (1976)).  But at the Rule 12(c) stage, a plaintiff need only "allege facts showing not only that the State has deprived him of a liberty or property interest but also that the State has done so without due process of law."  *Gearhart v. Thorne*, 768 F.2d 1072, 1073 (9th Cir. 1985).

Lutz has sufficiently alleged he was deprived of his property interest without due process of law by alleging that he was terminated by AO Clark without notice or an opportunity for a hearing, in violation of RCW 70.05.050.  ECF No. 1-1 at 22 ¶ 89.  Accordingly, he has alleged sufficient facts to survive a Rule 12(c) motion. *See Gearhart*, 768 F.2d at 1073.

1

2. *Substantive Due Process*

2     Lutz asserts a claim for wrongful termination in violation of his substantive

3 due process rights.  ECF No. 1-1 at 28-29 ¶ 139.  But as SRHD notes, Lutz fails to

4 specify the fundamental right he claims was violated.  ECF No. 20 at 33-35.

5     The Supreme Court has identified two features to a substantive due process

6 analysis: first, whether the rights and liberties are "deeply rooted in this Nation's

7 history and tradition, and implicit in the concept of ordered liberty, such that

8 neither liberty nor justice would exist if they were sacrificed"; and second, there

9 must be a "'careful description' of the asserted fundamental liberty interest."

10 *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal citations and

11 quotations omitted).

12     In this case, it is unclear what fundamental liberty interest was allegedly

13 violated.  In Lutz's Response to the instant motion, he only addresses SRHD's

14 procedural due process argument and, thus, he fails to identify a fundamental

15 liberty interest.  ECF No. 22 at 29-31.  Because Lutz has failed to allege any facts

16 supporting a violation of substantive due process, the court grants judgment on the

17 pleadings.

18

19

20

ORDER - 30

**D. Wrongful Termination in Violation of Free Speech Rights of the First Amendment, 42 U.S.C. § 1983, and Art. 1, § 4 of the Washington Constitution (Claim 6)**

Lutz alleges he was terminated in retaliation for his speech on various issues including firearms, racism, and COVID-19.  ECF No. 1-1 at 12 ¶ 30, 13 ¶¶ 32-34, 14-20 ¶¶ 44-79, 29 ¶¶ 141-43.  SRHD argues Lutz's speech was made in his capacity as a public employee and, thus, not protected.  ECF No. 20 at 35-38.

"A government employer 'cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'"  *Coszalter v. City of Salem*, 320 F.3d 968, 974 (9th Cir. 2003) (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983)).  The Ninth Circuit has articulated a five-step process to establish a First Amendment retaliation claim:

> (1) whether the plaintiff spoke on a matter of public concern;
> (2) whether the plaintiff spoke as a private citizen or public employee;
> (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action;
> (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and
> (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).  "The plaintiff bears the burden on the first three questions," while the defendant bears the burden on the last two questions.  *Greisen v. Hanken*, 925 F.3d 1097, 1108 (9th Cir. 2019).

Whether the plaintiff spoke as a private citizen is a question of law, but "the scope and content of a plaintiff's job responsibilities is a question of fact," and the court must take as true the plaintiff's allegations as to his own job responsibilities. *Id.* (internal quotations omitted). The Ninth Circuit "look[s] to three non-exhaustive factors" in this inquiry:

> (1) whether the employee confined his communications to his chain of command;
> (2) whether the subject matter of the communication fell within the [employee's] regular job duties; and
> (3) whether the employee spoke in direct contravention to his supervisor's order.

*Id.* at 1111 (citing *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074-75 (9th Cir. 2013) (en banc)) (quotation marks and alterations omitted).

Genuine issues of material fact exist precluding judgment on the pleadings, such as whether Lutz's speech was made outside his chain of command and in contravention of AO Clark's and the SRHD Board's orders. There are also existing disputes as to whether the subject matter of the speech fell within Lutz's regular job duties. For example, Lutz alleges that his speech was motivated by a broader "passion" for public health advocacy that meant "more to [him] than his job" and that although his communications concerned the subject of public health, they fell outside his regular job duties and within his field of personal interest. ECF No. 1-1 at 12 ¶ 27. However, Lutz also alleges that he wrote the Op-Eds under his "obligation *as the LHO* to engage in such advocacy." *Id.* at 12 ¶¶ 27-29

1    (emphasis added).  Lutz cites *Moonin v. Tice*, 868 F.3d 853, 862 (9th Cir. 2017) in

2    support of his argument that a public employee's speech is more likely to be made

3    as a private citizen "when he or she speaks to the community at large."  ECF No.

4    22 at 32.  However, *Moonin* is distinguishable—the employer in *Moonin* had a

5    policy forbidding employees from speaking publicly on certain topics, such that

6    speaking publicly on those topics fell outside the employees' job responsibilities.

7    868 F.3d at 862.

8           Here, because the scope and content of his job responsibilities is a question

9    of fact, there is a material dispute of fact precluding judgment on the pleadings and

10   he has alleged sufficient facts to survive a Rule 12(c) motion.  *See Gearhart*, 768

11   F.2d at 1073.

12      **E. Defamation**

13          Lutz alleges SRHD defamed him when certain unidentified, allegedly false,

14   statements were made about "his ethics, professionalism, misappropriation of

15   public funds and the performance of his job."  ECF No. 1-1 at 29-30 ¶¶ 144-46.

16   SRHD contends that Lutz has simply recited the elements of defamation and fails

17   to allege whether he has met the "timely and adequate correction or clarification"

18   requirement of RCW 7.96.040.  ECF No. 20 at 39-40.

19          "In a general defamation claim, the plaintiff must establish (1) falsity, (2) an

20   unprivileged communication, (3) fault, and (4) damages."  *Reykdal v. Espinoza*,

473 P.3d 1221, 1224 (Wash. 2020) (en banc).  Additionally, a public official who

claims to have been defamed "must establish something the average defamation

plaintiff need not establish: 'actual malice.'"  *Id.* at 1225 (quoting *N.Y. Times Co.*

*v. Sullivan*, 376 U.S. 254, 279-80 (1964)).  "Falsity in a classic defamation case is

a false statement."  *Mohr v. Grant*, 108 P.3d 768, 733 (Wash. 2005) (en banc).  But

"statements of 'pure' opinion" cannot be the basis for a defamation action.  *Dunlap*

*v. Wayne*, 716 P.2d 842, 848 (Wash. 1986) (en banc).

In addition, Washington's Uniform Correction or Clarification of

Defamation Act (RCW 7.96) requires a plaintiff to make "a timely and adequate

request for correction or clarification from the defendant" as a threshold

requirement before bringing a defamation claim, unless "[t]he defendant has made

a correction or clarification."  RCW 7.96.040(1).

First, Lutz alleges SRHD "perpetuated and aided" in defaming him by

"*negligently* making unprivileged false and untruthful statements about his ethics,

professionalism, misappropriate [sic] of public funds and the performance of his

job." ECF No. 1-1 at 29 ¶ 145 (emphasis added).  He was a public official, and

allegations of negligence do not meet the actual malice standard.

Second, Lutz has not pleaded any specifics about the statement(s) SRHD

allegedly made about him.  He alleges only generalized descriptions of the subject

matter of SRHD's statement(s), without providing the basic factual details that

ORDER - 34

would allow the Court to evaluate the sufficiency and plausibility of his claim—for

example, who made the statements, and where/when/to whom they were made.

Instead, Lutz has pleaded only a threadbare recital of the elements of a defamation

claim. *See Iqbal*, 556 U.S. at 678.

Finally, the Complaint does not allege whether Lutz has made a timely and

adequate request for correction or clarification from SRHD, or whether SRHD has

made such a correction or clarification. Therefore, Lutz has failed to allege he has

met the statutory prerequisites of RCW 7.96.040(1) for a defamation claim.

Because Lutz has failed to allege actual malice, identify any specific

defamatory statements, and assert that he has complied with statutory

requirements, he has not adequately pleaded a defamation claim.

**F. Leave to Amend**

In his response, Lutz seeks leave to amend any claims for which the Court

grants judgment on the pleadings. ECF No. 22 at 35. He states that he is "willing

and able to allege additional facts should it be necessary." *Id.*

After the deadline for amending as a matter of course has passed, "a party

may amend its pleading only with the opposing party's written consent or the

court's leave. The court should freely give leave when justice so requires." Fed.

R. Civ. P. 15(a)(2). "This policy is 'to be applied with extreme liberality.'"

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting

ORDER - 35

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).  But a district court "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing reasons a motion to amend should be denied).

SRHD does not directly respond to Lutz's request for leave to amend.  At most, SRHD argues that "where a plaintiff cannot allege facts consistent with the challenged pleading to cure the identified deficiency, dismissal without leave to amend is proper."  ECF No. 20 at 19 (citation and quotation marks omitted). SRHD does not actually argue that Lutz will not be able to cure the deficiencies in the Complaint (i.e., futility), or that amendment would otherwise be prejudicial, in bad faith, or result in undue delay.  *See AmerisourceBergen Corp.*, 465 F.3d at 951.  Conversely, Lutz contends that he will be able to cure these deficiencies by amendment.  ECF No. 22 at 35.  He specifically states that he has additional facts to add to supplement the WAPA and public-policy claims. ECF No. 22 at 22-23, 25, 29.

Accordingly, the Court will evaluate a properly filed motion to amend the complaint and proposed complaint, which must be filed no later than December 1, 2023.

## CONCLUSION

For the above reasons, the Court grants SRHD's motion and dismisses without prejudice Lutz's claims of wrongful termination in violation of the WAPA, wrongful termination for lack of just cause, wrongful termination in violation of public policy, wrongful termination in violation of substantive due process, and defamation, but denies SRHD's motion as to Lutz's other claims.

Accordingly, **IT IS ORDERED:**

1.    Defendant SRHD's Motion for Judgment on the Pleadings, **ECF No. 20**, is **GRANTED IN PART** and **DENIED IN PART**.

    a.   Plaintiff Lutz's claims for wrongful termination in violation of the Washington Administrative Procedure Act; wrongful termination for lack of just cause; wrongful termination in violation of public policy; wrongful termination in violation of substantive due process; and defamation are hereby **DISMISSED without prejudice**.

2.    Plaintiff shall file any motion for leave to amend the complaint and the proposed complaint **by no later than December 1, 2023**.

    a.   Pursuant to LCivR 7(c)(2)(B)(i), Defendant SRHD shall file any response **by no later than December 15, 2023.**

    b.   Pursuant to LCivR 7(d)(2)(B)(i), Plaintiff shall file any reply **by no later than December 22, 2023.**

**3.**     The parties are directed to consult with the Courtroom Deputy and file a joint status report proposing a new trial date and new pretrial dates and deadlines **by no later than December 1, 2023.**

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order and provide copies to counsel.

DATED November 17, 2023.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 38